## Chautauqua Lake Ice Co., Plff. in Err., *v.* George Mc- Luckey and Susan McLuckey, His Wife, in Right of Said Wife.

In an action for damages for injuries it appeared that the accident occurred on a narrow bridge ordinarily used by foot passengers but without a footway; the plaintiff was struck by the defendant's wagon at a point on the bridge where there was no railing; the evidence as to the speed of the wagon, as to the exact place where the accident occurred, and as to whether plaintiff or the wagon had entered the bridge first, was contradictory. *Held,* that the court committed no error in refusing to say that it was negligence on the part of plaintiff to undertake to cross the bridge and in leaving the whole question of the negligence of plaintiff and defendant to the jury.

(Argued October 26, 1887.   Decided November 7, 1887.)

October Term, 1887, No. 82, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiffs in an action for damages for personal injuries suffered by Mrs. McLuckey through the alleged negligence of a driver of the defendant.   Affirmed.

The facts are fully stated in the charge of the court, by Ewing, P. J., as follows:

Mrs. McLuckey has brought her suit to recover damages for an accident that occurred to her some time in April last on Thirty-Fourth street, on the south side, in the city of Pittsburgh.   She alleges that she was thrown from the bridge on that street by the negligent conduct of the driver of the defendant, . . . and that she has suffered pain, been disabled, and prevented from working and has been put to expense.   The hus-

NOTE.—Damages cannot be recovered for injuries to the plaintiff while walking upon a highway, when he knows that there is a sufficient footpath. Eby v. Shenk, 11 Lanc. L. Rev. 337.   So a compulsory nonsuit was properly entered where the plaintiff was on roller skates in the street when struck by the omnibus, though the latter was on the wrong side.   Young v. General Omnibus Co. 180 Pa. 75, 36 Atl. 403.   The same rules apply where the plaintiff was injured while sitting on the roadway.   Whissler v. Walsh, 165 Pa. 352, 30 Atl. 981.   But the question is for the jury where the plaintiff is sitting in a lot and the wagon is driven across the sidewalk. Chambers v. Carroll, 199 Pa. 371, 49 Atl. 128.

band necessarily joins in the action, and ordinarily if she would be entitled to recover anything, he would also in a separate action be entitled to recover. All parties concerned have very properly agreed, however, that all damages and compensation shall be disposed of in this suit, and any damages that at common law would be coming to Mr. McLuckey, if the plaintiff is entitled to recover, shall be assessed to Mrs. McLuckey in this case, so that we will treat it as though Mrs. McLuckey was not a married woman.

. . . There is a great deal of difference in the testimony of the parties as to just how the accident occurred. . . .

There are some things that do not appear to be in dispute— seriously at least. It seems that Thirty-Fourth street running to the river has a roadway over a trestle work that is covered with plank, which runs a distance of 154 feet, according to measurement. Some of the witnesses have said it is not particularly steep. Mr. Alexander, engineer at Jones & Laughlins, called by the plaintiff, gave an estimate of the elevation and the length that was wonderfully accurate to have been a mere estimate. The actual measurement made by Mr. Edeburn does not disagree with it seriously. The trestle work, according to the testimony of Mr. Edeburn, is in all, or the plank way, 154 feet, rising some 15 feet; the upper end next Carson street is some 15 feet higher than the lower end. It descends at a grade of 10 feet to the 100, and it appears to have a railing, at least on one side a part of the way down, where it is the highest, some 100 feet perhaps—possibly more, and the lower end does not appear to have any railing, or to have had at that time. It appears to be a narrow roadway at best, not sufficient for wagons to pass. The testimony of those who have measured it was that the lower half of it, or nearly all of the lower end, has plank now about 10 feet in width; at the higher portion there are plank that are wider.

The testimony of the defendant's witnesses is that at the time of this accident the plank at the lower end at least were shorter, the witnesses varying, but the last one making it 9 feet by measurement. It would also appear that on the upper half of this bridge the larger portion of the plank had been put on new in the summer of 1885, and in June or July, 1886, the lower half was changed.

The testimony of this last witness is that on the lower half of

it, at least at the time of this accident, it was worn, that the wheels of the wagon had cut a passage way that kept them substantially in the same place.    It would seem that this wagon of the defendant company at the time of the accident was going from Carson street down and Mrs. McLuckey was coming up Thirty-Fourth street.    That is agreed to on both sides.    At some place on the bridge, on what they call the upper side, the right hand side going down, she was thrown off, or fell off the plank to the ground below, and was injured.    The witnesses differ as to where she fell off.    Mrs. McLuckey and her daughter say that it was well up to half way up the bridge.    Mrs. Mannigan and the two drivers, or the driver and the helper, testify that it was at a point near the lower end, not far from the lower end of the plank way, which she pointed out to Mr. Edeburn, and who measured it and says it is 37 feet from the lower end of the bridge or plank way.    That is one question in dispute.    It is for the jury to determine from the testimony.    At all events, it would appear that she was below where that railing begins.    Mrs. Burgess would appear to have been up about where the railing begins.    They differ again in regard to the speed at which the wagon went on the bridge at Carson street, and the position of Mrs. McLuckey when it went on—Mrs. McLuckey and Mrs. Burgess saying they were nearly half way up before they saw the wagon, or before the wagon came on; that they saw it turning the corner and come on; whereas, the two men on the ice wagon say that they were about half way down the bridge when Mrs. McLuckey started to go on it at the lower end—another disputed fact, and one that strikes me as being of considerable importance in the case.

They differ again on another important matter.    Mrs. McLuckey and her daughter say that this wagon turned the corner and came down this bridge at a gallop—as fast as the horses could go—as fast, Mrs. McLuckey says, as they would have gone if they had been running away.    The parties on the wagon and Mrs. Mannigan say that they were going down at a fast walk, and only at that, and all agree that the wagon stopped at the lower end as it got onto the earth part of the road.    That is not in dispute.    Now if Mrs. McLuckey fell off where the defendant says she did the measurement would appear to be that the bridge is there 4 feet from the ground.    If she fell off where she says she did it was considerably higher from the earth, and there was more danger of being hurt.

To entitle the plaintiff to recover she must satisfy you by the weight of evidence first, that the defendant (and for the purpose of this case the driver is the defendant) was guilty of negligence that contributed to her injury. You must find both those things in favor of the plaintiff, or else your verdict must be for the defendant. Where negligence is inferred against either it must be a fair inference from all the testimony in the case; and it is immaterial on which side the testimony was given as to how you shall find on it. Negligence is a relative term; it is a want of the exercise of that care and skill and diligence which a man of ordinary prudence will exercise under the given circumstances of the case. The kind of driving that would be ordinary care on a country road or an unfrequented street might be very gross negligence on Fifth avenue, which is crowded with vehicles and passengers at every crossing. Extreme peril requires extreme care, and that is applicable to both sides here. That is the rule as to both. In peril the same degree of care is required of each side, that is, the care that a man of ordinary prudence would exercise under the circumstances of the case.

Now in this case the uncontradicted testimony shows a bridge —a covered trestle work. Under any circumstances that would require care on both sides. A man driving a wagon who entered either the upper or lower end of this bridge without looking to see whether a wagon was meeting him would be guilty of negligence. The very appearance of the bridge would show it, and he would be bound to look and see that there was no vehicle there. There is a dispute as to whether there was any other way for foot passengers to go than the plank way of the trestle work. The street, according to the testimony, is 60 feet wide, but it is not improved to that extent; it is not a graded and paved street. The defendant alleges that there was a sidewalk and that was the proper place for foot passengers to walk, and if they undertook to go up this roadway made for vehicles they did so at their peril. The plaintiff alleges that there was no foot walk there—no sidewalk—and that the people generally walked up the bridge. Now the court cannot take away that question of fact from the jury. It is for you to determine from the testimony; and it is perhaps not a very essential question in this case whether it was the only way, or whether there was a footway.

[The court could not say that it was negligence on the part of

the plaintiff to undertake to reach Carson street over this foot bridge, which it is evident was the pleasantest place to walk, if there was no danger.]3    It was undoubtedly, under the circumstances testified to and the uncontradicted testimony, the right place for wagons; it was the only place that wagons could go, and if a driver of a wagon took precaution to look and see that the roadway was clear when he entered at the head of the bridge, and found it so, and then drove in a careful manner, using necessary precautions, there would be no negligence.    And foot passengers entering on the lower end of this bridge—a steep grade, as it is there, traversed by vehicles, where, from the testimony on either side, it is more or less perilous in the case of a passing wagon—would be bound to look for a vehicle meeting them, and if there was one there and they failed to see it when it was dangerous they must take the consequences.

[If they see fit to take the risks, why the result of the risk is with them; and it is in that view of the case that I have said to you that it seems to me an important question as to the relative positions of these parties on the bridge, the plaintiff alleging that she was well on the bridge before the wagon turned around Carson street into the bridge and that she could not get back; the defendant on the other hand, alleging, and giving evidence to sustain its allegation, that it was on the bridge with the wagon and was well down it before she entered on the woodwork of it. The court has no opinion to express as to what the facts are, but it seems to me that that is an exceedingly important point in the case to determine as to whether either party was guilty of negligence.    Even after the parties were there the defendant would be bound to take all reasonable precautions to endeavor to stop. Nevertheless, even if the defendant's driver was guilty of negligence in the way he went down there; if the plaintiff herself was guilty of negligence in entering the bridge at the time that a wagon was coming there and that contributed to the injury, she cannot recover.    But both these questions are questions of fact for the jury under all the circumstances of the case; and bear in mind what I have before said to you, that negligence is not to be presumed of either party; it is only to be drawn from the evidence in the case.    Negligence is not to be presumed on the part of either party simply because an accident has occurred.    We are liable to accidents with the best of care.    If you fail to find these two points in favor of the plaintiff, namely: that the de-

fendant was guilty of negligenc ;, and that plaintiff was not guilty of negligence that contributed to the injury, you will not trouble yourselves about the question of damages.]4

The defendant presented the following points:

1. That under the evidence the plaintiff was guilty of contributory negligence.

*Ans.* Refused—it is a question of fact for the jury. 1

2. That the verdict of the jury should be for the defendant.

*Ans.* Refused. 2

Verdict and judgment for plaintiff for $400.

The assignments of error specified: (1, 2) The refusal of defendant's points; (3, 4) the portions of the charge inclosed within brackets; and (5) the action of the court in not charging the jury that if the plaintiff went upon the bridge while the wagon of defendant was descending it, in full view, she was guilty of contributory negligence and could not recover.

*S. A. McClung,* for plaintiff in error.—Whether a given state of facts constitutes contributory negligence is a question for the court. Catawissa R. Co. v. Armstrong, 52 Pa. 282.

The material facts being ascertained, the question of negligence then becomes exclusively a question of law. Pittsburgh, Ft. W. & C. R. R. Co. v. Evans, 53 Pa. 250; Payne v. Reese, 100 Pa. 301.

The court certainly erred in refusing the first and second points of defendant below.

If, however, in addition to the undisputed facts the jury had found that the plaintiff, with the wagon of the defendant coming down the bridge, had gone upon it to pass up, certainly the court below erred in saying to them that plaintiff's negligence was still a question of fact which they might find one way or the other.

The jury should have been told that having found that defendant's wagon was first on the bridge, plaintiff's negligence was no longer a question of fact for their determination. Pennsylvania R. Co. v. Bock, 93 Pa. 427.

*James H. Porte* and *Moore & McGirr,* for defendants in error.—Where there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, or where the measure

of duty is ordinary and reasonable care, and the degree of care varies according to the circumstances, the question of contributory negligence is necessarily for the jury. Pennsylvania R. Co. v. White, 88 Pa. 329; Born v. Allegheny & P. Pl. Road Co. 101 Pa. 334.

PER CURIAM:

The result of this case depended upon the credibility of evidence produced by the parties during the trial, and the court could not lawfully withdraw that evidence from the consideration of the jury. Nor can we see that the submission was not in proper form, or that there was anything exceptionable in the charge. Under these circumstances we must refuse to sustain the assignments of error.

Judgment affirmed.